IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZACHARY SIMONOFF, as Guardian for Fourough Bakhtiar, | ) ) ) | CASE NO. 1:17 CV 2574 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | JUDGE DONALD C. NUGENT |
| MEDHI SAGHAFI, M.D., et al., | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

This matter is before the Court on the Motion to Dismiss Defendants' Counterclaim filed by Plaintiff, Zachary B. Simonoff, in his capacity as Guardian of the Estate of Fourough Bakhtiar. (Docket #46.) Mr. Simonoff hereby moves the Court to dismiss Defendants' First Amended Counterclaim pursuant Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, asserting the First Amended Counterclaim fails to state a claim against Mr. Simonoff upon which relief can be granted and that the Court lacks subject-matter jurisdiction over certain counterclaims.

I. **Factual Background.**

On March 2, 2018, Defendants, Mehdi Saghafi; Mehdi Saghafi, M.D., Inc.; Medhi Saghafi M.D., Inc. Profit Sharing-Plan & Trust U/A dated January 13, 1975; and, Medhi Saghafi, M.D., Inc. Pension & Profit-Sharing Money Purchase Plan ("Counterclaimants"), filed their First Amended Counterclaim against Mr. Simonoff, as Guardian for Fourough Bakhtiar (hereinafter

referred to as "Mrs. Saghafi"). (Docket #33.) As summarized by Counterclaimants in their Memorandum in Opposition to Mr. Simonoff's Motion to Dismiss, the allegations of the First Amended Counterclaim are as follows:

> The facts set forth in the Counterclaim are incorporated herein by reference. However, broken down to simplest terms, the Guardianship and Divorce Case have been utilized in a surgical fashion to defraud Dr. Saghafi out of one-half (½) his share of marital assets. It cannot be disputed by any party that prior to May 6, 2013 (the date the Divorce Action was filed), Mrs. Saghafi was unable to care for herself and was suffering from severe dementia and diminished executive function, she was severally mentally incompetent (See: Counterclaim at 1). The limited medical records available to Defendants further confirm that she lacked the requisite mental capacity to perform daily personal functions, let alone understand the consequences associated with executing and/or changing legal documents, such as filing for divorce from her husband of fifty-two (52) years.
>
> Despite Mrs. Saghafi's incompetence, the Lorain County Probate Court authorized the proceeding of the Divorce Case without an evidentiary hearing. (See: Counterclaim at 39). The Divorce Case resulted in an unending revenue stream to support payments of unnecessary and excessive legal fees, guardian fees, and expenditures paid to Plaintiff, none of which benefited of [sic] Mrs. Saghafi and which caused outrageous monetary damages to Defendants, as well as a loss of consortium and alienation of affection from his fragile, incapacitated wife. This case has nothing to do with any claims that could be asserted by or on behalf of Mrs. Saghafi in the Lorain County Probate Court. The claims in this case stand alone, and are not derivative of the Guardianship. The Guardianship, for purposes of this case, is the tool and vehicle utilized by Plaintiff and others to defraud and convert Defendants' assets. (See: Counterclaim). Analysis of the irrefutable facts leads to the following conclusions: (a) Jaleh Presutto, Petitioner-Appellant's sister and the Ward'sdaughter, Jaleh Presutto, removed Mrs. Saghafi from the Martial Residence as the initial step to gain control of her mother's assets; (b) the Divorce Case did not further the interests of Mrs. Saghafi; (c) the Divorce Case and Guardianship have been used as a sophisticated tool, to pay Guardian fees and attorney fees, and to further the financial interests of Jaleh Presutto, Simonoff and other third parties. (See: Counterclaim).
>
> The facts which set forth the initial scheme to defraud Defendants' are set forth in the Counterclaim at paragraph 15 line 77. Simonoff as Guardian assumed Presutto's role and instead of correcting an out of control situation, motivated by cash, he jumped into the driver's seat and drove the vehicle. A rational justification for the Divorce Case cannot be established when considering these

facts:

>    1. Mrs. Saghafi was mentally incompetent and unable to understand the consequences of filing for divorce. (See: Counterclaim at 17);
>
>    2. The GAL recommended placing Mrs. Saghafi in an assisted living facility, where her needs could be properly met. (See: Counterclaim at 30);
>
>    3. Mrs. Saghafi could not benefit from the Divorce Case and possessed financial resources to pay for whatever personal maintenance and medical expenses she required.
>
> (See: Counterclaim at 41);
>
>    The only beneficiaries from the Divorce Case have been the many attorneys and guardians who have been paid handsome fees and reimbursed for what, on the surface, appears to be unnecessary expenditures. (See: Counterclaim at 96).

(Docket #81 at pp 4-5.)

Counterclaimants allege conversion and fraud against Mr. Simonoff (Counts I and II), asserting he converted assets and funds rightfully owned by Dr. Saghafi through the Guardianship and ignored his duties and obligations as Guardian in order to defraud Dr. Saghafi. Counterclaimants ask the Court to enter a declaratory judgment (Count III), finding (a) that the Cuyahoga County Court of Common Pleas Domestic Relations Court lacked personal jurisdiction over Mrs. Saghafi in the Divorce Case, as it proceeded based on the alleged intentional misrepresentations of Mr. Simonoff that Mrs. Saghafi was competent; (b) that all judgment entries issued in the Divorce Action are void; (c) that the QDRO is void and unenforceable; (d) that the Guardianship has no right or interest in the Pension or Profit Sharing Funds owned by or held for the benefit of Dr. Saghafi; and, (e) that Counterclaimants are entitled to all attorney fees, costs and expenses incurred. Counterclaimants assert that the Domestic

-3-

Relations Court lacked personal jurisdiction over Mrs. Saghafi due to her incompetency (Count IV) and ask that the Court "not enforce the QDRO in light of the fraud perpetrated upon the Domestic Relations Court" and to "collaterally attach and invalidate all Divorce Action judgment entries, including, but not limited to the QDRO." Counterclaimants allege abuse of process under Ohio law (Count V), claiming the Divorce Action was initiated and adjudicated in a proper form, but for perverted and ulterior reasons (Mr. Simonoff's personal interests and financial gain) and without probable cause. Counterclaimants allege a Civil claim under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. (Count VI). Finally, Counterclaimants assert a claim for loss of consortium (Count VII). Counterclaimants also make passing reference to the "Elder Abuse Prevention and Prosecution Act" and a violation of their Constitutional rights. (Complaint at Paragraph 12.)

On March 26, 2018, Mr. Simonoff filed his Motion to Dismiss Defendants' Counterclaim. (Docket #46.) Mr. Simonoff argues that any Counterclaims by the Professional Corporation should be dismissed because it lacks standing, as no "injury-in-fact" to the Professional Corporation has been alleged. Second, Mr. Simonoff argues that Counterclaimants do not state a valid Civil RICO claim because one of the alleged RICO "Enterprises" – the Guardianship of Fourough Bakhtiar – is not separate and distinct from Mr. Simonoff in his capacity as Guardian; that the other alleged RICO "Enterprise" – the alleged "association-in-fact" among Simonoff and six outside legal professionals – does not satisfy the legal standard for "enterprise" sufficient to state a valid RICO claim; and, that Counterclaimants fail to allege the requisite closed-ended continuity of the alleged pattern of racketeering activity. Third, Mr. Simonoff argues that the *Rooker-Feldman* Doctrine requires the dismissal of Counterclaimants'

remaining State law counterclaims against Mr. Simonoff for lack of subject matter jurisdiction. Additionally, Mr. Simonoff argues that the Court lacks subject matter jurisdiction over Counterclaimants' State law Counterclaims because they fall within the exclusive jurisdiction of the Lorain County Probate Court or, alternatively, that the Court should abstain from hearing such State law Counterclaims because they are inextricably intertwined with Ohio's Statutory regulation of Probate Court matters and/or that the Court should abstain from exercising jurisdiction over the State Law claims under the *Burford* abstention doctrine because the State of Ohio's interests in adjudicating this type of case are paramount and the dispute would be best adjudicated in a state forum.

On July 13, 2018, Counterclaimants filed their Memorandum in Opposition to Mr. Simonoff's Motion to Dismiss. (Docket #81.) Counterclaimants argue that Mehdi Saghafi, Inc. has standing as the owner of the funds placed in the pension accounts which are the subject of the QDROs at issue; that the QDROs at issue were obtained through fraudulent misrepresentation; and, that Mehdi Saghafi, MD has suffered a loss in excess of $4,000,000.00 as a result of Mr. Simonoff's alleged misconduct. Counterclaimants argue that they have asserted a valid RICO claim; that the *Rooker-Feldman* Doctrine does not apply because the State Court Judgments at issue were the result of fraud; and, that this Court has ancillary jurisdiction over Counterclaimants' State law claims. Counterclaimants also argue that the claims in this lawsuit have nothing to do with the Probate Court, thus abstention based on the Probate Court's exclusive jurisdiction is inapplicable and that the *Burford* abstention doctrine likewise has no application.

**II.   Standard of Review.**

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint. A motion to dismiss for lack of subject-matter jurisdiction may involve either facial attacks or factual attacks upon a court's jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When resolving a facial attack, the reviewing court assumes the allegations within the complaint are true. *Id.* "Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations." *Id.* When reviewing a factual attack, the court must weigh the conflicting evidence to determine whether subject-matter jurisdiction exists. *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). Plaintiffs bear the burden of establishing that jurisdiction exists. *Madison Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject-matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). It is with this standard in mind that the instant Motion must be decided.

### III. Discussion.

Counterclaimants state in their Opposition Brief that, "This case has nothing to do with any claims that could be asserted by or on behalf of Mrs. Saghafi in the Lorain County Probate Court. The claims in this case stand alone, and are not derivative of the Guardianship." Yet, Counterclaimants assert, in their First Amended Counterclaim, that the Guardian, Mr. Simonoff, converted assets and funds through the Guardianship; perpetrated a fraud on Dr. Saghafi through the Guardianship; and, willfully, intentionally and maliciously ignored his duties and obligations

as Guardian and, in bad faith, breached his duties as Guardian to further his personal interests and defraud Dr. Saghafi. Counterclaimants ask the Court to declare that the Cuyahoga County Court of Common Pleas Domestic Relations Court lacked personal jurisdiction over Mrs. Saghafi in the Divorce case, based on alleged misrepresentations made by Mr. Simonoff in the Probate Court[1]; declare that all judgment entries issued in the Divorce Action are void; declare that the QDRO issued in Domestic Relations Court is void and unenforceable; and, declare that the Guardianship has no right or interest in the Franklin Templeton Pension and/or Profit Sharing Fund owned by or held for the benefit of Dr. Saghafi. Counterclaimants ask the Court not to enforce the QDRO alleging a fraud was perpetrated upon the Domestic Relations Court and ask the Court to collaterally attack and invalidate all Divorce Action judgment entries, including, but not limited to the QDRO.

The *Rooker-Feldman* Doctrine bars attempts by a Federal plaintiff to receive appellate review of a State-Court decision in a Federal District Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). The *Rooker-Feldman* doctrine bars relitigation of claims actually raised in State

---

[1]

This argument was recently ruled upon within the past week by the Eighth District Court of Appeals in the underlying Domestic Relations Court litigation. In *Bakhtiar v. Saghafi*, 2018-Ohio-3796, P20 (Cuyahoga Cty. Ct. App., Sept. 20, 2018), the Court of Appeals stated, "In this matter, the issue of the domestic relations court's personal jurisdiction over the wife was extensively litigated throughout the proceedings. That is, the husband raised the issue in July 2013 and February 2015. The contention was rejected twice by the trial court before it was raised in 2017, giving rise to the instant proceedings. Moreover, in the 2016 appeal, the husband also raised the challenge of personal jurisdiction by disputing the guardian's right to participate in the domestic relations case, a position which is inconsistent with the one he takes herein. Accordingly, the issue of personal jurisdiction is barred by res judicata and does not afford a basis for disturbing the final divorce decree entered in 2015."

Court proceedings, as well as claims that are inextricably intertwined with claims asserted in those proceedings. *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998). In practice this means that when granting relief on the Federal claim would imply that the State Court judgment on the other issues was incorrect, Federal courts do not have jurisdiction. *Pieper v. American Arbitration Assn., Inc.*, 336 F.3d 458 (6th Cir. 2003).

The essence of what Counterclaimants seek from this Court is relief from Orders and Judgments of the Probate and Domestic Relations Courts arguing that the underlying Orders and Judgments were procured through corrupt activity and fraud. The actions of Mr. Simonoff were taken pursuant to orders of the Lorain County Probate Court and/or the Cuyahoga County Domestic Relations Court and Dr. Saghafi participated in the underlying Probate Court and Domestic Relations Court proceedings. Orders in both cases have been appealed numerous times to the Eighth and Ninth District Courts of Appeal. Counterclaimants are barred under *Rooker-Feldman* from receiving appellate review of State Court decisions in this Court.

Furthermore, while the Court recognizes that Counterclaimants' RICO claim, if sufficiently pled, may be heard by this Court, the litigation of said RICO claim is inextricably intertwined with all of the issue raised and adjudicated in State Courts and, therefore, under the facts and circumstances in this case, the Court finds abstention to be both necessary and warranted. Counterclaimants have the option of pursuing a RICO claim in State Court if warranted, thus this Court's decision to abstain from addressing said claim will not serve to prejudice Counterclaimants.

### IV. Conclusion.

The Motion to Dismiss Defendants' Counterclaim (Docket #46) filed by Plaintiff,

Zachary B. Simonoff, is hereby GRANTED.

Counterclaimants' State law claims are hereby DISMISSED WITH PREJUDICE.

Counterclaimants' RICO claim is hereby DISMISSED WITHOUT PREJUDICE and may be refiled in State Court if warranted.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: September 21, 2018